CLD-178                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3482
_____

MARCELLUS A. JONES,
                          Appellant

v.

JOHN E. WETZEL, Secretary/Head of PA DOC;
DORINA VARNER, Chief Grievance Officer; WARDEN TABB BICKELL;
CAPTAIN K. WALTERS; CAPTAIN HARRIS; LT. FOGLE; C.O. BOAL;
C.O. LONG; C.O. CHERRY; C.O. NELSON;
MARY LOU SHOWALTER, Medical Supervisor

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil No. 4-13-cv-01400)
District Judge: Matthew W. Brann

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 12, 2018
Before: CHAGARES, GREENAWAY, JR. and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 7, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Marcellus Jones, proceeding in forma pauperis, appeals from the dismissal of several of his claims and grant of summary judgment in favor of the six remaining defendants in an action Jones brought pursuant to 42 U.S.C. § 1983. For the reasons that follow, we will summarily affirm the District Court's judgments.

I.

Because we write primarily for the parties, we will recite only the facts necessary for our discussion. At the time relevant to this litigation, Jones was incarcerated in the Restricted Housing Unit at the State Correctional Institution in Huntingdon, PA. On May 14, 2011, Jones was allegedly denied hygiene supplies by defendant Boal. After Jones requested to speak to a lieutenant, defendant Fogle allegedly told Jones that he would not receive any hygiene supplies and that he would be "painted orange" if he continued to complain, apparently referring to a heavy use of pepper spray.

Jones then covered his cell door with a towel, in violation of prison rules. He contends that he did so in an attempt to notify an on-duty supervisor that he had a complaint. He refused to obey repeated orders to uncover the door, which prevented staff from being able to see into his cell. A shift commander authorized the use of force, if necessary, to remove Jones from his cell and conduct a security check. About an hour after the commander was notified about Jones's actions, a nurse who is not a party to this litigation reviewed Jones' medical information and medically approved the use of pepper spray on him. Because he had asthma, Jones also had been previously examined and

2

approved for the use of pepper spray prior to this incident.

About two hours after the medical clearance, a three-member compliance team was assembled; a nurse accompanied them. Jones was repeatedly ordered to uncover his door and position his hands to be handcuffed, which he did not do. Fogle then warned Jones that pepper spray would be administered into his cell if he did not comply and gave him several more opportunities to uncover the door, which Jones again did not do. An application of pepper spray was administered into Jones's cell through a vent; Fogle repeatedly ordered Jones to come to the door to be handcuffed and Jones again repeatedly refused to do so. Fogle warned him that his failure to comply would result in another application of pepper spray. After a second application was ineffective because the spray can was aimed incorrectly, another application was sprayed into Jones's cell. Jones then complied with orders to lie on the floor to be handcuffed.

The compliance team entered the cell, placed Jones in restraints, and removed him from the cell. The nurse flushed his eyes and administered his inhaler. Jones was subsequently decontaminated, assessed again by the nurse, and placed into a new cell. The compliance team's actions are documented in video footage of this incident. Jones claims that defendants Boal, Long, Nelson, and Cherry administered the spray in excessive amounts despite their knowledge of his medical conditions. Jones testified at his deposition that on the date of this incident, he was taking a high dosage of a psychotropic medication which affected his perception.

Jones filed two grievances about this incident, in which only defendants Boal,

3

Long, and Fogle are mentioned.  Defendants Harris and Showalter reviewed his grievances.  Both grievances were denied and the denials were upheld by the Facility Manager.  Jones attempted to appeal both denials, but his appeals were deemed untimely.

In May 2013, Jones filed a complaint in the District Court alleging that numerous defendants had violated his civil rights.  He brought his claims against eleven defendants.  After all defendants moved to dismiss Jones' complaint, the District Court granted their motion in part and dismissed several of Jones' claims sua sponte.  The District Court permitted Jones to proceed solely on his excessive force claims against defendants Boal, Long, Fogle, Nelson, Cherry, and Showalter.  Those remaining defendants moved for summary judgment, which the District Court granted on September 27, 2017.  Jones timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a District Court's decision to grant a motion to dismiss.  Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).

We also exercise plenary review over a district court's grant of summary judgment.  Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  We will "grant summary judgment if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may summarily affirm a district court's decision "on any basis supported by the record" if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

## III.

We conclude that the District Court properly dismissed the majority of Jones's claims and granted summary judgment to defendants on Jones's remaining claims.

A.      Dismissal

Jones presented five claims in his complaint which the District Court correctly dismissed early in the litigation. First, Jones's claims for money damages against all defendants in their official capacities were barred by the Eleventh Amendment. See A.W. v. Jersey City Pub. Sch., 341 F.3d 234, 238 (3d Cir. 2003); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

Next, Jones could not state a conditions of confinement claim against defendants Boal and Fogle for failing to provide him with hygiene products on a single occasion because the deprivation did not amount to an Eighth Amendment violation.[1] See Farmer

---

[1] As the District Court noted, it remains unclear whether Jones sought to pursue a conditions of confinement claim or only included an allegation about this incident in his complaint as part of his narrative regarding his excessive force claims.

5

v. Brennan, 511 U.S. 825, 834 (1994) (explaining that "a prison official violates the Eighth Amendment only when" an inmate suffers a "sufficiently serious" objective deprivation which "result[s] in the denial of the minimal civilized measure of life's necessities" and the official acts with "a sufficiently culpable state of mind") (internal quotation marks omitted). Jones also could not state a civil rights conspiracy claim against defendants Wetzel, Varner, Bickell, Showalter, and Harris because he failed to plead anything more than conclusory allegations that these defendants somehow conspired against him. See Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003) ("To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'").

To the extent that Jones intended to raise a claim for discrimination under the Americans with Disabilities Act, his claim was appropriately dismissed because he did not allege any discriminatory conduct by defendants. See 42 U.S.C. § 12132. Additionally, to the extent that Jones intended to pursue a negligence claim against any defendant, his claim fails because negligent conduct by officials does not rise to the level of a constitutional violation under § 1983.[2] See Davidson v. Cannon, 474 U.S. 344, 347-

---

[2] We note that the District Court did not explicitly grant Jones leave to amend his complaint when it dismissed the majority of his claims. See Fed. R. Civ. P. 15(a)(2). Jones sought reconsideration of the dismissal and moved several times for leave to file an amended complaint. The District Court did not abuse its discretion in denying Jones's

48 (1986).

      B.      <u>Summary Judgment</u>

Only Jones's excessive force claims against defendants Boal, Long, Fogle, Nelson, Cherry, and Showalter survived dismissal. The District Court granted those defendants' subsequent summary judgment motion because Jones had failed to exhaust his administrative remedies and because even if he had exhausted them, he could not show that defendants used excessive force.[3]

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before bringing a suit alleging unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a). "[P]roper exhaustion of administrative remedies is necessary" to fulfill the PLRA's exhaustion requirement. <u>Woodford v. Ngo</u>,

---

requests to amend his complaint because his proposed amendments would have been futile — they did not contain any allegations that would have allowed his claims to survive dismissal. <u>See</u> <u>U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.</u>, 769 F.3d 837, 849 (3d Cir. 2014) ("[W]e review the District Court's denial of [a motion for] leave to amend for abuse of discretion, and review de novo its determination that amendment would be futile.").

[3] To the extent that Jones challenges the District Court's denial of his three discovery-related motions when it granted defendants' summary judgment motion, we conclude that the District Court did not abuse its discretion. <u>See</u> <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n</u>, 107 F.3d 1026, 1032 (3d Cir. 1997) ("We review discovery orders under an abuse of discretion standard."). The District Court gave Jones many opportunities to gather the discovery he sought over several years, and Jones did not specify what discovery he still sought in his motions. <u>See</u> <u>In re Fine Paper Antitrust Litig.</u>, 685 F.2d 810, 818 (3d Cir. 1982) ("[W]e will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible.") (internal quotation marks omitted).

548 U.S. 81, 84 (2006). The Pennsylvania Department of Corrections' grievance policy involves a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). An inmate must substantially comply with a prison grievance system's procedural rules to avoid procedural default of a claim. See Spruill v. Gillis, 372 F.3d 218, 228-32 (3d Cir. 2004).

Although Jones submitted grievances about the May 14, 2011 incident, it is undisputed that he failed to timely complete the final level of the grievance process, resulting in a procedural default of his excessive force claims. Jones's only response to defendants' summary judgment motion was to file a number of discovery motions. He did not provide an explanation in those motions for why he had not completed the administrative process.

In other filings, Jones has generally claimed that he had attempted to have documents copied on several occasions so that he could file his appeals but that prison staff did not make the copies that he had requested. Jones has not provided any further detail to explain how his inability to get copies on certain occasions prevented him from timely filing his final appeals, particularly given the extension of time that he was granted after he raised the issue with an administrator. Jones has not shown that he was "thwarted [in] his efforts to exhaust his administrative remedies" such that the grievance process was not "available" to him. See Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002).

8

Further, as the District Court noted, the overwhelming undisputed evidence shows that pepper spray was used as a method of last resort to manage Jones's admitted violations of basic prison safety rules. Jones had been medically cleared for its use and a nurse was present with the compliance team to attend to Jones's medical needs. The administration of pepper spray was limited to the amount necessary for Jones to begin responding to the compliance team and was stopped as soon as Jones began complying with orders. Jones had numerous opportunities over the course of several hours to avoid the administration of pepper spray and was repeatedly given notice that it would be used if he did not comply but still chose not to follow orders. On this record, Jones would be unable to show that defendants' use of force violated his constitutional rights under the Eighth Amendment.[4] See Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (explaining that "whenever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"). Thus, summary judgment for the remaining defendants was proper.

---

[4] For defendant Showalter, Jones has not established her participation in the pepper spray incident beyond her review of one of his grievances after it occurred; thus, he has not established the requisite personal involvement by Showalter to state an Eighth Amendment claim against her based on this incident. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs.").